IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

CASE NO. 1:16-CR-632-JMC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | SENTENCING MEMORANDUM |
| SUSAN SHERLOCK, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The Defendant, Susan Sherlock, by and through her undersigned counsel, hereby submits this Memorandum in support of her request for a variance below the sentencing guidelines. Based upon an examination of the totality of the circumstances of Mrs. Sherlock's offense conduct, the undersigned respectfully requests that the Court grant a variance and impose a sentence below the advisory guideline range.

**I.     HISTORY OF THE CASE**

Mrs. Sherlock is named in 3 counts of a forty-five (45) count indictment, with a forfeiture allegation, which was filed in the District of South Carolina on August 16, 2016. On February 28, 2017, pursuant to a written plea agreement, Mrs. Sherlock pleaded guilty to Count 1 of the Indictment (Racketeering Conspiracy).

The Presentence Report ["PSR"] has been prepared, and based upon a total adjusted offense level of 18, and a criminal history category of I, the guideline imprisonment range is 27 to 33 months (Zone D). The Government has filed a Motion for Downward Departure pursuant to U.S.S.G. §5K1.1 on July 12, 2018, seeking a three (3) level downward departure. Should the

Court grant the Government's motion, the advisory guideline range would fall to Level 15 in Zone D of the sentencing table, requiring imprisonment.

Mrs. Sherlock respectfully requests that this Court grant a variance, sentencing her below the advisory guideline range to a probationay sentence, in consideration of the factors set forth in 18 U.S.C. §3553. The basis of her argument is the plea to the Racketeering count and the intended loss from a life insurance policy drives the guideline levels and overstates the extent of her criminal culpability.

## II. THE COURT SHOULD CONSIDER THE RELEVANT FACTORS UNDER 18 U.S.C. §3553(a) AND GRANT A DOWNWARD VARIANCE

Judges are free to exercise significant discretion in imposing sentences below those called for under the Guidelines. *Kimbrough v. United States*, 128 S.Ct. 558 (2007); *Gall v. United States*, 128 S.Ct. 586 (2007). Treating the Guidelines as advisory allows the Court to consider the guideline range calculation as <u>one of many factors</u> in determining a sentence *no greater than necessary to achieve the goals of sentencing* set forth in 18 U.S.C. § 3553(a)(2).

## III. THE § 3553(a) SENTENCING MANDATE

In determining the sentence minimally sufficient to comply with the purposes of sentencing as outlined in Section 3553(a)(2), the court considers several factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to

>provide restitution to victims. <u>United States v. Eura</u>, 440 F.3d 625 (4th Cir. 2006).

While district courts must "consider" the Guideline range, <u>United States v. Booker</u>, 543 U.S. 220, 245-46 (2005), the other factors are not subordinate to the Guidelines. Sentencing courts have a duty to consider many factors, even factors formerly prohibited by the guidelines, in determining the type of sentence that satisfies the mandate of § 3553(a). See <u>United States v. Abu Ali</u>, 528 F.3d 210 (4th Cir. 2008). The sentencing judge, after considering §§ 3553(a) and 3661 factors, has full discretion to sentence anywhere within the statutory range. Courts may impose a severe or more lenient sentence as long as the final sentence "is reasonable." <u>United States v. Go</u>, 517 F.3d 216, 218 (4th Cir. 2008).

    **A.    History and Characteristics of the Defendant**

Mrs. Sherlock was born in 1962 in Athens, Georgia to the marital relationship of Jimmy Sherlock and Bridgett Gorman Sherlock. Raised in the North Augusta area of South Carolina, she completed 4th grade at a private Catholic school. She was married at age 15 to Tommy Sherlock in 1977. The marriage remains intact and they have two daughters, Rosemary Sherlock (38) and Bridget Bates (36). <u>See</u> PSR at ¶¶53, 54, 60.

Unfortunately, it appears that due to the circumstances of her birth, Mrs. Sherlock, with only an 4th grade education and married off as a teenager, was never afforded any opportunity to "break away" from the community. It is all that she has known in her life. A teen bride with a 4th grade education simply has severely limited options. Having never held a job and confined to an insular environment as a teen wife and young mother, her involvement in the offense conduct alleged in the indictment is both tragic and unsurprising. Much like the cycle of crime and poverty that can plague some families in urban environments, a similar cycle of conduct has stunted the prospects for so many in this community.

Mrs. Sherlock comes from a modest background and lives in an unassuming trailer in comparison to many of the other people in her community. She lives in the home with her husband, Tommy Sherlock, who suffers from a malady of illenesses, her father (73 years old), a sister, daughters and son-in-laws, and grandchildren. In all fourteen (14) people live in a single trailer. Mrs. Sherlock is the caregiver for her father who is suffering from complications related to his diabetes, and is primary caregiver for her husband, Tommy. This court previously gave a variance sentence to Tommy Sherlock, placing him on home confinement as a condiction of probation because of his substantial illness. Mrs. Sherlock has shown herself to be a dedicated wife, mother, and caregiver to her extended family. She is the glue that keeps her family together.

**B.     Health and Emotional Status**

Mrs. Sherlock is in good physical health, and her overall mental and emotional health is good, with no substance abuse issues. Although in all candor, the stress from this federal prosecution has taken the toll on her over the course of the last two years. See PSR at ¶¶56,57,58 and 59.

**C.     The Circumstances of the Offense**

While the allegations contained in the Presentence Report are far-reaching, it is critical to note that Mrs. Sherlock was only alleged to have been involved in 3 counts – which essentially consist of two or more racketeering activities, to include mail and wire fraud related to federal food stamp benefits (SNAP); life insurance applications ; and vehicle financing (i.e. car leases).

**The Car**: The Government investigation revealed that Mrs. Sherlock misrepresented material information on credit applications for automobile lease on a 2015 Crystler 200. This car was purchased by both Tommy and Susan Sherlock. The Sherlocks were not able to make

4

payments on the car, and it was repossessed within a year of being purchased. The Government and the defendant have stipulated to a loss amount of $16,0000 for the vehicle. The court has previously ordered Tommy Sherlock to pay restitution in the amount of $16,000. Mrs. Sherlock acknowledges she is jointly and serverally liable for that restitution. See PSR at ¶26.

**Life Insurance Policy:** The other predicate offense of the plea was Mrs. Sherlock's representation of a false income on a life insurance policy taken out on her life in the amount of $750,000. This policy was purchased from Leonard New (co-defendant) at his insistence in a door to door sale. They were able to make payments for a few months before the policy was cancelled. It should be noted that Ms. Sherlock signed a blank application and the representations regarding income were supplied by New. It is important to note the loss amount from this count is the intended loss, (not actual loss) of $750,000, and that number drives the guidelines up 10 levels in this case. See PSR at ¶23.

**Food Stamps:** There is not a specific amount holding Susan Sherlock accountable for the food stamps. The allegation was based on "other available financial records" showing Mrs. Sherlock was employed with an earned income (the car and the life insurance application). There is no loss attributed to her in the presentence report. In fact, Mrs. Sherlock hasn't committed fraud in her application for food stamps, and still regularly receives them for her family. The Government was never able to identify any loss from the food stamps, and they should not be considered as illegal conduct in the sentencing of Mrs. Sherlock. See PSR at ¶25.

D.     **The Need for Deterrence**

Deterrence of criminal conduct both, specific and general, is one of the major considerations embodied in 18 U.S.C. § 3553. Regarding specific deterance, it should be noted that Mrs. Sherlock is not a habitual transgressor of the law. Mrs. Sherlock is 56 years old with

no prior criminal history. She maintains meaningful and supportive relationships with her family members and her risk of recidivism is low.  The mere fact of this prosecution has the desired effect of keeping her from ever engaging in similar conduct for the remainder of her life.  By the imposition of a less severe sentence than called for in the guideline range, along with a period of supervised release or probation with special conditions, the Court can fashion a punishment for Mrs. Sherlock which recognizes the offense while also providing an avenue for her to move forward  with being a productive  member  of society.

As for general deterannce any similarly situated individual would certainly be deterred from the conduct here if they gave any thought to the consequences of Mrs. Sherlock's actions. She has pled guilty to a felony and faces the possibility of going to prison. As a criminal offender, she has been labeled a felon and as such, the collateral consequences are also severe. She has lost the right to vote and the right to serve on a jury. Mrs. Sherlock – <u>never</u> educated beyond the 4th grade, never shown a world outside the Travelers, a teen bride - is only 56 years old. Through the imposition of detailed special conditions, the Court, with the assistance of the Probation Office, can certainly impose a sentence with adequate safeguards taking into consideration deterrence from criminal conduct.

      E.      **The Need to Protect the Public**

The need to protect the public from Mrs. Sherlock is also one of the critical sentencing factors to be considered. Mrs. Sherlock has no juvenile or adult criminal record. <u>See </u>PSR ¶¶ 34-36. Looking at the totality of the circumstances, there is simply no risk of endangering the public if this Defendant is sentenced to a term of probation and/or supervised release.  Pursuant to 18 USC §3561, this offense is a Class C Felony, there is no statutory prohibition against the Court granting a probationary sentence and Defendant submits that such a sentence is appropriate. <u>See</u>

PSR ¶¶ 92-94. As a first-time offender with no prior criminal history up until her mid 50's, Mrs. Sherlock is an ideal candidate for a sentence which varies from the guidelines. Put simply, analyzing recidivism within the context of age and first-offender status is relevant and necessary in a situation such as this.

### F.     The Need to Provide the Defendant With Needed Education or Vocational Training or Medical Care.

If Mrs. Sherlock is to succeed after her case is over, in light of her husband's disability, she will need to financially support herself and her family without engaging in criminal conduct. Therefore, counsel is informed and believes that Mrs. Sherlock will need to attempt to obtain lawful employment. However, given the incredibly unusual circumstances of this insular community, her lack of education, lack of work history and her felony conviction, it may prove difficult for her to secure employment. If the Court imposes employment as a condition of her sentence, undersigned counsel would respectfully request that the Court consider allowing community service as an alternative to employment. See PSR ¶ 95.

Moreover, undersigned counsel is informed and believes that Mrs. Sherlock would benefit from any educational training that may be available.

### G.     The Kinds of Sentences Available

Pursuant to 18 U.S.C. § 3553(a)(3), the Court, in determining the particular sentence to be imposed, should consider the kinds of sentences available. The Court has broad authority to structure sanctions and individualize a sentence. Effective punishment accomplishes several important goals of the criminal justice system; one goal is the rehabilitation and reintegration of a defendant back into society. Punishment too severe or harsh will frustrate the goal of returning a defendant to society at the appropriate time after a sufficient period of punishment has passed.

7

As currently set forth in the PSR, the guideline sentence is level 18 criminal history category 1 in Zone D of the Sentencing Table, suggesting a term of imprisonment from 27 to 33 months. Even considering the Government's Downward Departure motion of 3 levels to 15, she is still facing an 18-34 month term of imprisonment, and is ineligible for a probationary sentence under the guidelines. However, as previously noted, since the offense is a Class C Felony, the Court is free to vary from the guideline sentence. Having accepted responsibility and admitted her guilt, Mrs. Sherlock has the chance to become a productive member of society. As such, it does not appear that this is an individual who needs, or deserves, a term of incarceration to satisfy the sentencing factors set forth in 18 U.S.C. §3553.

### H.     Restitution

As reflected in the PSR, and pursuant to the terms of the plea agreement, Mr. and Mrs. Sherlock agree to pay restitution. The parties have agreed to $16,000 as the appropriate amount in Tommy Sherlock's sentencing and Susan Sherlock accepts that figure. There is not an amount attributed to any food stamp fraud and for the reasons previously stated this allegation should not be considered.

### I.     Other Considerations

Mrs. Sherlock – pulled out of school as a young child, married off at 16, and born into the Travelers community – will face an uphill battle trying to lead a productive life for herself outside of the criminal conduct in which she was engaged. Mrs. Sherlock has accepted responsibility of her role in this enterprise and cooperated with the Government authorities. Her guideline range is driven not by actual loss, but intended loss of $750,000 that existed during the course of the life insurance policy, which lasts for a period of a few months.

8

As such, it would appear that a sentence which imposed a term of incarceration would be unnecessarily punitive and fail to achieve the goals of the Government in deterring this type of conduct.

## IV. CONCLUSION

In conclusion, Mrs. Sherlock requests that the Court consider all the factors set forth in her Sentencing Memorandum, grant her a variance from the advisory guidelines, and impose a probationary sentence no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Respectfully submitted,

S/ J. CHRISTOPHER MILLS
J. Christopher Mills Federal Bar No. 4802
Post Office Box 8475
Columbia, South Carolina 29201
(803) 748-9533
E-mail: chris@chrismillslaw.com

ATTORNEY FOR SUSAN SHERLOCK

Columbia, South Carolina
July 18, 2018